OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed.
Defendant has been convicted of robbery, first degree, as a result of his armed hold up of a cafe during which he threatened to shoot the cashier, Efraim Gonzalez. After defendant fled the cafe Gonzalez immediately ran into the street where he saw his manager, Nelson Aleman, and told him of the crime. Aleman had seen defendant in the cafe a few minutes earlier and when he spotted him again, across the street, he *939 chased him into the subway and onto a train. Aleman then summoned a transit police officer who arrested defendant.
Identification was the principal issue in the case and thus defendant requested and received a pretrial Wade hearing. At the hearing Gonzalez indicated that he described defendant to police officers who came to the cafe immediately after the robbery and that they wrote down the description. Apparently, this was the first indication defendant or the prosecutor had that any police personnel other than the arresting transit officer might have been involved in the case and that Rosario material undisclosed to defendant might exist (see, People v Rosario, 9 NY2d 286, and codification of the rule at CPL 240.45 [1] [a]). After the jury was sworn, but prior to opening statements, defense counsel moved to preclude Gonzalez from testifying on the ground that the written record of Gonzalez’s statement to the investigating police had not been served upon him.
The court held a hearing to determine whether a writing existed and whether there had been a Rosario violation. Police Officer Reycraft was called and testified that on the night of the crime she and her partner, Officer Mosely, responded to a radio call for a robbery in progress. Seconds later Gonzalez came to the car and gave the two officers a description of the robber and told them he had fled east on 49th Street with Aleman in pursuit. Officer Reycraft testified that she saw Officer Mosely writing for a few seconds while Gonzalez was talking — speed being "very important” — "just to jot down the description and get the initial information.” She did not know what Mosely had written or on what form the entries were made, but apparently Mosely had been writing either in his memo book, on a "scratch 61” sheet or perhaps on both. In any event, Officer Mosely immediately transmitted Gonzalez’s description of the robber over the radio and defendant was given the Sprint tape of that transmission.
Officer Mosely was unavailable at the time of trial and despite repeated and intensive investigations by the police and the District Attorney no one was able to locate any of Mosely’s notes or any follow-up report filed by him.
At the conclusion of the hearing, the court denied defendant’s motion to preclude Gonzalez from testifying. When it submitted the case to the jury, however, the court instructed the jurors that they could draw an adverse inference against the People because of their failure to produce Officer Mosely’s notes. The court’s Rosario rulings are challenged in the present appeal.
*940 Three categories of Rosario violations are apparent from our decisions. The first includes cases involving delay in the disclosure of Rosario material. Reversal is required in such cases if the defense is substantially prejudiced by the delay (People v Ranghelle, 69 NY2d 56, 63). The second includes cases in which the People fail completely to provide the material to the defendant even though they continue to possess it. Such failures constitute per se reversible error requiring a new trial preceded by disclosure of the material (People v Jones, 70 NY2d 547, 553; People v Novoa, 70 NY2d 490, 499; People v Ranghelle, supra, at 63). Finally, there are cases where Rosario evidence has been lost or destroyed and cannot be produced (see, People v Haupt, 71 NY2d 929 [decided herewith]). Just as the People have a duty to produce Rosario material they also have a correlative "obligation to preserve evidence until a request for disclosure is made” (People v Kelly, 62 NY2d 516, 520; see also, United States v Bryant, 439 F2d 642; People v Saddy, 84 AD2d 175). Thus, it is no answer to a demand to produce that the material has been lost or destroyed. If the People fail to exercise care to preserve it and defendant is prejudiced by their mistake, the court must impose an appropriate sanction. The determination of what is appropriate is committed to the trial court’s sound discretion, and while the degree of prosecutorial fault may be considered, the court’s attention should focus primarily on the overriding need to eliminate prejudice to the defendant (People v Kelly, supra, at 520-521).
The trial court decided in this case to deny the sanction requested by defendant — preclusion of the principal witness’ testimony — and instead to sanction the People for their loss by delivery of an adverse inference charge. That relief was appropriate. The People apparently were unaware of the Rosario material until trial, if indeed there was any, and the possibility that defendant was prejudiced by its destruction was remote. Assuming Officer Mosely recorded the description Gonzalez gave him, he contemporaneously broadcasted a description of defendant over the police radio and a tape reciting it was disclosed to defendant. Under the circumstances, whatever risk of prejudice to defendant there might have been was overcome by the adverse inference instruction.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacos a concur.
Order affirmed in a memorandum.