OPINION OF THE COURT
George E. Wade, Jr., J.
The defendant, Karl Richards, has been indicted for the crimes of criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree and criminal trespass in the second degree. He moves to suppress crack cocaine and United States currency which were seized on February 20, 1990 in apartment 4-B of the Gravesend Housing Project, 2737 West 33rd Street, Brooklyn, N. Y.; said premises being owned by the New York City Housing Authority. Defendant was an occupant of said apartment at the time of the seizure. He also moves to suppress a sum of money found on him at the time of his arrest.
A hearing was held before this court on October 25 and November 1, 1991. The People presented two witnesses, Fireman Steven Kennish, who was a Housing Authority police officer on February 20, 1990, the date of the incident, and John Hall who was a Housing Assistant for the New York City Housing Authority on the same date. Defendant submitted an affidavit on his own behalf.
Initially the People contended that defendant had no standing to challenge the seizure of the crack cocaine and the money (see, People v Wesley, 73 NY2d 351). Subsequently, the People conceded that because the prosecution of this case depended on the statutory presumption (Penal Law § 220.25 [2]) defendant did have standing to challenge the seizure of the drugs and the money (People v Barrows, 155 AD2d 470; People v Tejada, 171 AD2d 585).
Based upon the credible testimony of Fireman Steven Kennish (Kennish) and Housing Assistant John Hall (Hall) the court comes to the following findings of facts and reaches the following conclusions of law.
*777 FINDINGS OF FACTS
Fireman Kennish was employed as a Housing police officer by the New York City Housing Authority from January 21, 1985 to October 19, 1990. On February 20, 1990 he was instructed to assist a Housing Assistant to enter apartment 4-B, 2737 West 33rd Street, Brooklyn, N. Y., located in the Gravesend Housing Project. He was informed that this apartment was supposedly vacant but there had been rumors of drug activity around this apartment. He met the Housing Assistant at about 9:15 a.m. and unlocked the lock, but the door would not open. He then knocked on the door and when he heard someone respond, he kicked in the door and observed the defendant run down the hall and yell something into the bedroom. Kennish entered the apartment in pursuit of defendant and then observed another male on the bed and ordered that person out of the bed. While doing so he observed a clear plastic bag on a bureau in the bedroom containing crack cocaine and another plastic bag contained various denominations of United States currency all in plain and open view. Kennish placed defendant and the other male under arrest and seized the crack cocaine and the money.
Besides the bed and the bureau, there were other pieces of furniture in the apartment including a television set and a couch. Kennish was unable to provide as Rosario material his memo book, because same was lost after his employment with the Housing Authority ended.
Hall was a Housing Assistant at the Gravesend Housing Project from May 1989 to September 1990. His duties as a Housing Assistant included rent collection, renting of apartments, coordinating repairs and management of buildings within the project. As a Housing Assistant he also handled surrenders of apartments and supervised the changing of locks of surrendered apartments. From September 1988 until February 16, 1990, the listed tenant of apartment 4-B was Laura Hawkins and her two small children.
Hall was present at apartment 4-B on February 20, 1990 when Kennish entered the apartment. On February 16, 1990 Dorothy Hawkins, mother of the tenant, executed a notice of intent to vacate and surrendered the keys to said apartment to Hall on behalf of her daughter. Rent ledger cards indicated that there were rent payments credited to said apartment on behalf of Laura Hawkins through June of 1990. Laura Hawkins’ rent was sent directly to the Housing Authority by the *778 Department of Social Services (DSS) and although DSS had been notified of tenant’s vacancy, because of a computer or clerical error, payments continued to be credited to the tenant. These excess payments were returned by Hall. Another tenant moved into apartment 4-B at the end of February 1990. Neither the defendant nor the other male present in the apartment on February 20, 1990 had permission of the Housing Authority to occupy said premises. At no time thereafter did Laura Hawkins apply to be reinstated to that apartment.
Defendant submitted an affidavit in support of his motion to the effect that he was visiting the said apartment on February 20, 1990 and had been invited there by a young lady who said she was a relative of Laura Hawkins. The court does not credit such affidavit except to the extent that defendant admitted that he was an occupant on February 20,1990.
CONCLUSIONS OF LAW"
At the outset this court is called upon to determine the impact that loss of Rosario material would have on the hearing. Dismissal of the indictment or preclusion of a witness for failure to provide Rosario material at a hearing is an extreme penalty and should not be used unless prejudice to defendant is apparent. (People v Kelly, 62 NY2d 516.) Loss or destruction of Rosario material may result in an adverse inference charge at trial. (People v Martinez, 71 NY2d 937.) At the hearing stage it is the court that weighs the credibility, of witnesses and any adverse inference from the loss or destruction of Rosario material.
The entry into this apartment by the Housing Authority Police under the circumstances herein without a warrant would have been impermissible and unreasonable had the tenant Laura Hawkins remained in occupancy on February 20, 1990. Defendant suggests that she was still in occupancy, because she did not personally sign the notice of intent to vacate on February 16, 1990 and because furniture remained therein. However, one can designate an agent, even in the absence of writing, to complete a given task. Even if the mother did not have the legal authority to relinquish the apartment, the Housing police officer acted reasonably. The Housing Authority may rely upon a person with "apparent” authority (Illinois v Rodriguez, 497 US 177, 110 S Ct 2793, 111 L Ed 2d 148; People v Adams, 53 NY2d 1). Housing Assistant Hall knew that the person surrendering the keys and signing *779 the notice of intent to vacate was the mother of the listed tenant. He was thus authorized to rely upon that relationship. What is of greater significance is the surrender of the keys to the apartment. The keys to premises are "a symbol of possession * * * [W]hen a tenant upon relinquishing possession returns the keys * * * this * * * as a general rule, constitute^] an act evidencing an intent to offer a surrender.” (2 Rasch, New York Landlord and Tenant § 869 [2d ed]; see also, South Ferry Bldg. Co. v 44 Wall St. Fund, 142 Misc 2d 54, 56; Fishel v Baronelli, Ltd., 119 Misc 2d 625, 627.) The notice of intent to vacate stated that property not removed from the apartment was to be considered abandoned and worthless. Thus, furniture left in the apartment vacated by the tenant did not support an indicia of possession.
The surrender of possession, the return of the keys, the fact that Laura Hawkins did not at anytime thereafter attempt to regain possession of the apartment along with the fact that the Housing Authority placed another tenant in that apartment indicates that Laura Hawkins had surrendered possession of that apartment to the Housing Authority on February 16, 1990 and no one else thereafter had a right to possession superior to the Housing Authority. Having possession of the apartment thereafter, the Housing Authority had the absolute right, through its agents, servants and/or employees to enter said apartment on February 20, 1990 without a warrant and to seize contraband in open view and even to make a full blown search thereof.
Defendant contends that it would be unjust to apply the presumption against him because when arrested he was not in the bedroom where the drugs were found and, thus, not in "close proximity” to the drugs (Penal Law § 220.25 [2]). This is a factual issue not to be resolved as part of this hearing to suppress. In any event "close proximity” has not been given such a narrow reading (see, People v Daniels, 37 NY2d 624, 627; People v Garcia, 156 AD2d 710, 711; People v Massene, 137 AD2d 624, 625).
Accordingly, the motion to suppress the crack cocaine and money found in premises 2737 West 33rd Street, Brooklyn, N. Y., apartment 4-B, on February 20, 1990 is denied. Likewise denied is that part of the motion to suppress money found on defendant at the time of his arrest.