■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE HARDY, Appellant.—Judgment of the Supreme Court,

Bronx County (Ivan Warner, J.), entered December 11, 1989, convicting defendant, after a trial by jury, of Attempted Murder in the Second Degree, Assault in the First Degree, three counts of Assault in the Second Degree, three counts of Burglary in the First Degree and sentencing him, as a second felony offender, to concurrent terms of 8 to 16 years for the attempted murder and one burglary count, 6 to 12 years for the assault in the first degree count, 5 to 10 years for the remaining two burglary counts and 3½ to 7 years for the second degree assault counts, is unanimously reversed, on the law and the matter remanded for a new trial.

There was evidence submitted at trial that defendant attempted to kill Norman Miller, the friend of his estranged wife, Constance Hardy. Defendant appeared at her apartment early in the evening of March 31, 1989. After he kicked at the door, his wife summoned the police. They escorted defendant to the subway station. However, he returned a short time later and broke into the apartment when Ms. Hardy opened the door to let Mr. Miller leave. Defendant uttered expletives at Miller and said he was going to kill him. He swung a metal bar at Miller's head. Defendant hit the victim four or five times with the metal bar, then struck him with a clothes iron, slashed him with a steak knife and bit his face.

Police Officer Francis Paciullo testified that as he spoke to another officer, making mention of the fact that Mrs. Hardy had been stabbed in the arm, defendant said "I didn't mean to stab her, but she kept getting in the way when I was trying to cut [his] throat open." Later defendant said, "when the police were there, I figured she was in there with her lover, so I would leave and case the situation." He further remarked, "that fool was there begging me not to kill him. I bit off a piece of his mouth and spit it in his face." Paciullo testified that he did not write these statements down at that time, but memorized them. The next day, in the District Attorney's office, Paciullo said that he wrote the statements on a piece of paper which he gave to an Assistant District Attorney (ADA) for transcription into the case folder. At the time of trial, the Assistant, who had left the office, was unavailable. This piece of paper disappeared.

Defendant contends that he was denied a fair trial by the court's refusal to give an adverse inference charge concerning these lost notes containing defendant's purported statements.

We agree that the failure of the court to impose *any* sanction for the *Rosario* violation by the People mandates reversal *(see, People v Wallace,* 76 NY2d 953, 954).

The People contend that, absent any testimony that the officer had only summarized or editorialized the statements when he transcribed them, the lost document did not contain a prior statement of Officer Paciullo, but of defendant, and is therefore not *Rosario* material. This misapprehends the nature of the missing paper. It did not memorialize what defendant said to the officer, but rather, what the officer told the Assistant District Attorney that defendant said to him the day before. Functionally, it is no different than if the officer told the ADA the conditions inside the apartment, the clothes defendant was wearing, etc., and contemporaneously wrote the information down. The actual statement which was not provided was a prior statement in writing by the police officer witness, although the prior statement by the witness recounted the alleged statement by the defendant. While the defendant's own statement to the officer would not, of itself, be *Rosario* material *(see, People v Brewer,* 136 AD2d 831, 833), once the officer memorialized this statement in writing for the prosecutor as to what he had been told the day before, and which would become the basis of his testimony against defendant, this writing became *Rosario* material. The defense is entitled to examine a witness' prior statement, whether or not it varies from his testimony on the stand, as long as the statement relates to the subject matter of his testimony *(People v Rosario,* 9 NY2d 286, 289). *People v Howard* (127 AD2d 109), cited by the People, is not to the contrary, since the statement here was not double hearsay as in *Howard.* Further, *Howard's* continuing viability is now in doubt *(see, People v Wahad,* 158 AD2d 312, 314-315, *lv denied* 75 NY2d 970).

We further find that the furnished criminal court folder was not the " 'duplicative equivalent' " of the missing paper *(People v Ranghelle,* 69 NY2d 56, 63). There was no showing that the prosecutor "faithfully" copied Paciullo's notes into the court folder *(People v Hyde,* 172 AD2d 305, 306), and while Paciullo never asserted that the folder did not "match" the contents of the paper, neither did he affirmatively state that he compared the final report with the lost notes he prepared *(see, People v Geathers,* 172 AD2d 134).

One might come to the conclusion that the *Rosario* doctrine, as it has been extended, acts more to create traps for honest, but unwary police officers and prosecutors, than to serve as remedial protection for defendants. However, we emphasize that defendant here requested some sanction for the loss or destruction of the statement, and Criminal Term refused to

impose *any* sanction. This constituted an abuse of discretion. Where, as here, the defendant was prejudiced, " 'the [trial] court *must* impose an appropriate sanction' " *(People v Wallace,* 76 NY2d 953, 955, *supra,* quoting *People v Martinez,* 71 NY2d 937, 940).

We note that the particular sanction to be imposed rests in the discretion of the trial court *(People v Martinez, supra,* at 940). In this case, a simple instruction that the jury could construe the missing evidence against the People should have been adequate to overcome the prejudice to defendant arising from the loss of the material. *(Supra.)* Concur—Murphy, P. J., Rosenberger, Ellerin and Asch, JJ.