THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MARKEITH BOYD, Appellant.

First Department, April 15, 1993

434

APPEARANCES OF COUNSEL

*Tamara Detloff* of counsel *(E. Joshua Rosenkranz,* attorney), for appellant.

*Susan H. Odessky* of counsel *(Joan P. Sullivan* and *Hilary*

*Hassler* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

RUBIN, J.

On this appeal, defendant challenges his conviction, under indictment number 12204/89, for the gunpoint robbery of an individual on a midtown street. Prior to the trial of this action, defendant was tried and convicted for a series of unrelated robberies of luggage stores under two separate indictments, numbers 10080/89 and 10080A/89, which were consolidated for trial (the consolidated indictments). On appeal, defendant asserts that his conviction under indictment number 12204/89 violated his right to a speedy trial (CPL 30.30); that the destruction of certain scratch notes, including an identification given by the complaining witness, violated his rights pursuant to *People v Rosario* (9 NY2d 286, *cert denied* 368 US 866); and that the introduction of testimony of a previous photographic identification by the complaining witness constitutes reversible prejudicial error.

At trial, testimony was received from the victim and from Detective Mordechai Dzikansky, who investigated the robbery. Defendant, who did not present a case, appeared *pro se,* assisted by a legal advisor.

### FACTS

The complaining witness testified that, on August 22, 1989 at 4:20 A.M., he was on his way to an early breakfast at a midtown Manhattan restaurant, walking south on Park Avenue in the vicinity of 58th Street. The weather was clear and the avenue well illuminated by street lights and the lights of a nearby bank. Defendant, wearing a yellow T-shirt and dark pants, approached from the vicinity of 57th Street, walking directly towards the victim. As the two men met, defendant pulled out a chrome-plated .38 calibre snub-nosed revolver, poked it in the victim's solar plexus and pushed him up against the wall of the bank. After threatening the victim, defendant rifled through his pockets, dropping any papers and documents on the sidewalk and retaining $900 in cash. Defendant then demanded a wallet, to which the victim responded that he did not carry one. Defendant continued to search for a wallet and, failing to locate one, told the victim to turn and walk away without looking back. Complainant complied and

turned to look back only after reaching the other end of the block. Seeing no one, he called the police.

The responding officers obtained a description of the assailant as they drove the victim around the area in an unsuccessful attempt to locate defendant. Later that morning, the officers brought complainant to view a suspect at a showup, but he stated with certainty that the man being detained was not defendant.

Subsequently, complainant gave a description of defendant to Detective Dzikansky who had been assigned to investigate the case. The detective testified that complainant picked defendant's photograph out of an array of six photographs and identified him at a lineup conducted several weeks later.

### I. SPEEDY TRIAL

■ The People concede that, in deciding the speedy trial motion, Supreme Court properly charged the prosecution with 108 days towards the six-month statutory limit. At issue are five time periods, three of which are referrable to proceedings involving the unrelated consolidated indictments, which Supreme Court excluded from the time chargeable to the People.

On February 6, 1990, Supreme Court issued a decision on defendant's omnibus motion in this case and adjourned the proceedings to March 6, 1990 (28 days) to enable the prosecution to consolidate the indictments arising out of the luggage store robberies. Supreme Court excluded this period as time consumed by motion practice (CPL 30.30 [4] [a]). The People contend that a discovery motion previously filed by defendant under indictment number 10080A/89 sought, in addition to discovery, dismissal of all three indictments on the ground defendant was deprived of the right to testify before the Grand Jury. Defendant, however, denies that his motion related to the instant indictment and contends that, during this time period, no motion was pending in this case until a discovery motion was filed on February 27, 1990.

On a speedy trial motion, if the papers contain sworn allegations of an unexcused delay exceeding the time limit imposed by CPL 30.30, it is the prosecution's burden to demonstrate that a particular period of time should be excluded from the calculation of the statutory limit *(People v Santos,* 68 NY2d 859, 861; *People v Berkowitz,* 50 NY2d 333, 349). The People fail to substantiate the claim that the motion filed in regard to one of the consolidated indictments had any bearing

on the indictment subject to appeal, making only a reference to the minutes of April 3, 1990 which postdate the adjournment and are not included in the record. Therefore, this period of time is chargeable to the prosecution.

On March 6, 1990, the People submitted a response to defendant's February 27th discovery motion, filed in regard to the consolidated indictments. The court adjourned all proceedings to March 20th for decision on the motion and for trial of the instant criminal action. The motion contained, *inter alia,* a belated demand to testify before the Grand Jury with respect to the indictment in this case (number 12204/89). While defendant characterizes his attempt to obtain re-presentment of this indictment to the Grand Jury as "half-hearted", it is not the ardor of his application but its existence which is dispositive. Whether or not this adjournment may be said to be on consent, as Supreme Court found, it is excludable as time consumed in motion practice involving this action (CPL 30.30 [4] [a]).

Trial of the consolidated indictments resulted in a verdict of guilty, returned on May 3, 1990, upon which the court adjourned the case for sentencing on May 29th. Defendant contends that this period of time is not excludable, as Supreme Court determined, as time consumed in "trial of other charges" (CPL 30.30 [4] [a]). This Court does not agree. A criminal action culminates in sentencing (CPL 1.20 [16]), and all proceedings up until the imposition of sentence are excludable from the statutory period *(People v Bryant,* 12 NY2d 719).

On May 29th, the prosecution informed the court that necessary witnesses would be out of the country for two weeks and that the prosecutor would be out of the country for an additional two weeks. On appeal, the People concede that the resulting adjournment to July 2, 1990 (34 days) was not on consent, as Supreme Court ruled. The People nevertheless contend that the adjournment was warranted by "exceptional circumstances" pursuant to CPL 30.30 (4) (g). However, the absence from the country of a witness, or for that matter the prosecutor, during this popular vacation month can hardly be regarded as exceptional *(People v Jones,* 68 NY2d 717, 718). While the unavailability of a witness may be an exceptional circumstance within the contemplation of the statute, the People are required to demonstrate that they "attempted with due diligence to make the witness available" *(People v Zirpola,* 57 NY2d 706, 708). As no reason for the unavailability of the witness was stated, the prosecution provided the court with no

basis upon which to conduct a hearing to determine whether or not the circumstances were exceptional.

Finally, defendant contends that the time period preceding submission of his CPL 30.30 motion on August 7, 1990 (32 days) should not have been excluded because his consent to the adjournment was not expressed on the record *(People v Liotta,* 79 NY2d 841). However, in his reply dated September 28, 1990, submitted in response to the People's answer to this motion, defendant stated: "On July 2nd, the People contend their 'readiness' by the 5th of July. Defense Counsel asked for August 7th. Judge Weissberg stated on the official Court record that from July 2nd to July 5th is chargeable to the People and from July 6th to August 7th is chargeable to the defense."

The general rule, as recently stated by the Court of Appeals in *People v Cortes* (80 NY2d 201, 215), is that "the defendant ordinarily has the burden of showing that any postreadiness adjournments occurred under circumstances that should be charged to the People" (citing *People v Anderson,* 66 NY2d 529, 541). However, "it is the People's burden to ensure, in the first instance, that the record of the proceedings at which the adjournment was actually granted is sufficiently clear to enable the court considering the subsequent CPL 30.30 motion to make an informed decision as to whether the People should be charged" *(supra,* at 215-216, citing *People v Liotta, supra,* at 843; *People v Berkowitz, supra).* While it is clear, in this instance, that no record was made, defendant affirmed in his papers that the adjournment was obtained at the request of "Defense Counsel". Thus, the matter was not in dispute on the motion, and Supreme Court properly charged this time to defendant. Having conceded the issue below by virtue of his admission, defendant cannot raise it for the first time on appeal (CPL 470.05 [2]).

In addition to the 108 days not in dispute, the People are chargeable with 28 days from February 7 to March 6, 1990 and 34 days from May 30 to July 2, 1990, for a total of 170 days, well within the statutory 6-month period. Therefore, Supreme Court properly denied defendant's motion to dismiss the indictment pursuant to CPL 30.30.

## II. *ROSARIO*

Defendant also contends that the failure to provide him with *Rosario* material warrants reversal of the judgment of

conviction. Specifically, he argues that the prosecution's failure to preserve and turn over to him scratch notes made by a police officer who responded to the complainant's 911 call requires a new trial *(People v Ranghelle,* 69 NY2d 56, 64-65).

The complaining witness testified that, while he was being driven around in the attempt to locate his assailant, a female police officer was "writing the story down". The only other reference in the record to any notes taken by a police officer appears on the cross-examination of Detective Dzikansky, who was shown a document and identified it: "A police department UF61 which is the initial complaint report taken after the crime occurs, the police officer writes down what had occurred, brief description of the person, briefly the facts." In response to further questioning, the detective indicated that this form, not a log or memo book, constitutes "the initial report that we had the facts of what had occurred."

The People do not dispute that such handwritten notes constitute discoverable material pursuant to CPL 240.45 and, therefore, the issue of whether or not the draft or "scratch copy" is actually *Rosario* material is not before us *(People v Wallace,* 76 NY2d 953, 955). The People argue only that defendant was not prejudiced by the failure to preserve the notes. They allege, as they did upon defendant's application for a mistrial, that it is standard operating procedure to prepare an identical typewritten complaint report, at which time the scratch copy is routinely destroyed. In response to defendant's motion to set aside the verdict (CPL 330.30), the People state that "defendant was provided with the original complaint report [complainant] gave the police that morning. There are no other police reports with any other descriptions given by [complainant]." Defendant does not deny that he received a copy of the typewritten report.

The Court of Appeals has held that the "corollary of the duty to disclose is the obligation to preserve evidence until a request for disclosure is made" *(People v Kelly,* 62 NY2d 516, 520) and that, if the defendant is prejudiced by the prosecution's inadvertence in failing to preserve and turn over discoverable material, "the court must impose an appropriate sanction" *(People v Martinez,* 71 NY2d 937, 940), which is a matter "committed to the trial court's sound discretion" *(supra,* at 940).

With the exception of the UF61 complaint report testified to by Detective Dzikansky, there is no evidence that any hand-

written notes were made on the day of the robbery. In *People v Hyde* (172 AD2d 305, 306, *lv denied* 78 NY2d 1077), this Court held that the routine destruction of the draft copy from which a typed complaint report is prepared does not constitute a lack of due diligence in preserving evidence *(see, People v Haupt,* 71 NY2d 929; *see also, People v Paranzino,* 40 NY2d 1005). Even assuming, for the sake of argument, that the existence of additional notes could be established, the appropriate remedy is imposition of a sanction *(People v Martinez, supra,* at 940).

Under the circumstances of this case, where the only remedy demanded by defendant was the declaration of an immediate mistrial after the close of evidence, it was not an abuse of discretion to deny such a drastic remedy *(People v Rice,* 75 NY2d 929, 932-933). The failure to preserve the scratch copy of the complaint report results neither from inadvertence on the part of the prosecution nor in prejudice to defendant *(see, People v Martinez, supra)* and, in any event, declaration of a mistrial, as demanded by defendant, is unwarranted *(People v Cruz,* 179 AD2d 529, *revd on other grounds* 81 NY2d 738).

### III. PHOTOGRAPHIC IDENTIFICATION

■ Lastly, defendant contends that Supreme Court improperly permitted the prosecutor to introduce testimony, over his objection, concerning the identification of defendant by the complaining witness from a photographic array some three weeks after his arrest. The court ruled that defendant had opened the door to this testimony during his cross-examination of the detective assigned to investigate the complaint. Defendant examined the detective as to the number of times he met with the complaining witness and what transpired on those occasions, the description the detective had obtained of the robbery suspect and its source, the procedure used in conducting the lineup and the fairness of the lineup, particularly in regard to the similarity to defendant of the other persons who appeared in it.

The only reference to the photographic array was made in response to a question concerning the purpose of a meeting between the detective and the complaining witness. The answer, "To view the photo array," is hardly sufficient to open the door to testimony, on redirect examination, recounting the positive identification made by the complaining witness on that occasion *(cf., People v Langert,* 105 AD2d 845).

"The rule is settled in this State that a witness may not testify to an extrajudicial identification of a photograph of the defendant" *(People v Griffin,* 29 NY2d 91, 93). While an exception to the rule is made where a claim of recent fabrication is advanced *(People v Coffey,* 11 NY2d 142), the prosecution may not evade the rule "by relying on some minor point of cross-examination to justify the introduction of prior consistent statements" *(People v Baker,* 23 NY2d 307, 323). Merely attacking the credibility of a prosecution witness on cross-examination is not a sufficient basis to warrant the introduction of a previous identification of the defendant by the witness from photographs *(People v Caserta,* 19 NY2d 18, 24-25). While such testimony may be appropriate when introduced to correct some misapprehension created by the defense upon cross-examination *(People v Lindsay,* 42 NY2d 9, 12), no such situation is present in this instance. And, even in an appropriate case, the prosecutor may not exploit the opportunity by elaborating upon the details of the prior photographic identification *(see, People v Brown,* 62 AD2d 715, 723-724, *affd* 48 NY2d 921). The testimony therefore constitutes improper bolstering *(People v Griffin, supra; People v Trowbridge,* 305 NY 471).

Under the circumstances of this case, however, the error must be regarded as harmless *(People v Johnson,* 32 NY2d 814, 816). The victim watched defendant approach him from the other end of a city block, illuminated by street lighting and light from a bank. After defendant drew a gun and pushed him up against the wall of the bank, he observed defendant from a distance of about two feet away while defendant rifled through his pockets looking for money and for a wallet. The victim testified that he remained calm and studied defendant's appearance in order to remember his face, which was at all times unobscured, and that, from the time defendant approached him to the end of the robbery, a period of two or three minutes elapsed. He identified defendant at trial and at a lineup conducted some six weeks after the crime, without hesitation.

The circumstances of the observation of defendant by the complaining witness in this case are substantially the same as those in *Johnson (supra,* at 816) in which the proof of identification and guilt was found to be "clear and strong". The bolstering testimony did nothing more than confirm the bare fact of identification, adding nothing to the probative value of complainant's identification *(People v Johnson,* 57 NY2d 969),

and "there [is] no significant probability that the erroneously admitted testimony contributed to the jury's verdict" *(People v Rice, supra,* at 932). Therefore, the erroneous admission of the description testimony constitutes harmless error, and reversal of the conviction is not required.

Accordingly, the judgment of the Supreme Court, New York County (Franklin R. Weissberg, J., on speedy trial motion; John A.K. Bradley, J., at trial and sentence), rendered February 20, 1991, convicting defendant, after jury trial, of robbery in the first degree, and sentencing him, as a second violent felony offender, to an indeterminate term of imprisonment of from 6 to 12 years, should be affirmed.

WALLACH, J. P., KUPFERMAN and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, rendered February 20, 1991, affirmed.