*565 OPINION OF THE COURT
Raymond Guzman, J.
The defendant has moved this court to remedy a Rosario violation. Specifically, the defendant has asked for both a de novo pretrial (Dunaway/Huntley/Wade) suppression hearing, and for a hearing to determine appropriate sanctions, such as that held in People v Martinez (71 NY2d 937 [1988]). In addition, the defendant has moved to preclude the introduction of certain non-Rosario material (the tape of a 911 call) in evidence at trial.
The objective is to fashion a commonsensical remedy which will eliminate prejudice to the defendant. Accordingly, a reopened (but not de novo) suppression hearing, as described infra, is ordered to be held before Judicial Hearing Officer (JHO) Morris Goldman, who conducted the initial hearing. Afterwards, JHO Goldman is instructed to issue new recommendations on the disposition of the defendant’s Dunaway/Huntley/Wade motions, in light of both the new testimony and any adverse inference from the loss or destruction of Rosario material. The defendant’s motion to preclude the introduction at trial of the tape of any 911 call made in connection with this case, if any exists, is granted. The defendant’s motion for a hearing to determine Rosario sanctions is denied.
Background
The defendant was arraigned on February 28, 2000, and charged with assault in the third degree, attempted assault in the third degree, and harassment in the second degree. At arraignment, the People served notice of their intention to offer evidence at trial of statements (oral and written) allegedly made to police by the defendant, and to offer testimony concerning the defendant’s identification by eyewitnesses at the scene of the incident.
In an omnibus motion, filed on May 4, 2000, the defendant asserted that there was no probable cause for his arrest. He further asserted that any statements he made to the police should be suppressed as the fruit of this illegal arrest, and/or because they were made involuntarily, and/or because they were improperly noticed. The defendant also asked that all identification testimony be suppressed, on the ground that any such identification was the result of his illegal arrest. On May 8, 2000, the court granted a pretrial suppression (Dunaway/Huntley/Wade) hearing on the issues raised, and adjourned the case to June 12, 2000.
*566 On June 12, 2000, Judge Arthur Schack sent the case for the Dunaway /Huntley / Wade hearing to be held before JHO Morris Goldman. At the beginning of the hearing, both the People and the defendant’s counsel stated for the record that one piece of Rosario material had yet to be provided to the defendant, to wit: a copy of the “back side” of the so-called “AIDED card” (a document on which an officer at the scene provides a handwritten description of a victim’s injuries). It should be noted that a copy of the “front side” of the AIDED card, which notes the victim’s name, age, etc., was turned over to the defendant.
The People said they would turn over the missing document as soon as they received it from the police. The defendant’s counsel noted that Judge Schack had given her leave to reopen the Dunaway/Huntley/Wade hearing if she found, upon receipt of the missing document, that it raised any issues. The JHO deemed this acceptable and the hearing proceeded.
The sole witness was the arresting police officer (P.O.), P.O. Christie, who testified on behalf of the People. Based on the transcript of the hearings, a summary of his testimony follows:
On February 27, 2000, P.O. Christie and his partner were on duty in a patrol car, when they were flagged down by a man who said that his wife had just been hit by (another) man. P.O. Christie saw a woman (the complainant) with a bloody, swollen nose, leaning against a wall. The complainant’s husband pointed out the defendant, who was standing about 10 feet away, as the assailant. The complainant told P.O. Christie that while she was walking down the street, the defendant, who was walking toward her from the opposite direction, punched her in the face, causing her to fall and hit her head; she asked for a doctor. The defendant told P.O. Christie that “while adjusting his jacket, he hit the woman in the face.” P.O. Christie also spoke to another witness. Other officers arrived at the scene; on cross-examination, P.O. Christie surmised they had arrived in response to a radio run generated by a 911 call. P.O. Christie arrested the defendant, who was sent to Bellevue for evaluation, and was later transported to the precinct house, where he was given Miranda warnings. The defendant subsequently made a written statement. (No testimony was elicited on the subject of the AIDED card.)
JHO Goldman found the witness credible. He concluded that there had been probable cause to arrest the defendant and that the identification was not “the slightest bit” police arranged. Accordingly, he recommended denial of the defendant’s Dun-away and Wade motions. The JHO also found that no Miranda *567 violations had occurred; however, his recommended disposition of the Huntley motion was difficult to decipher from the transcript.
Following the hearings, the People and the defendant both filed motions to controvert and/or reaffirm the JHO’s findings concerning the defendant’s oral and written statements. (Neither sought to controvert the JHO’s Dunaway and Wade recommendations.)
At the calendar call on September 13, 2000, this court issued a written decision adopting the JHO’s recommendation to deny the defendant’s Dunaway and Wade motions, and agreeing that there were no Miranda violations. Nevertheless, this court found that the oral statement noticed at arraignment was entirely different than the oral statement referred to at the suppression hearing. Accordingly, this court granted the defendant’s Huntley motion to suppress the oral statement(s), and denied suppression of the written statement. The defendant then requested a motion schedule to argue the Rosario issue.
Motions Now Before the Court
On September 22, 2000, the defendant filed two motions. One asked that the People be precluded from introducing as evidence at trial the tape of any 911 call which may have been made in connection with this case, on the grounds that such tape (if any exists) had not been turned over to the defendant. The other motion asked for a de novo Dunaway/Huntley/Wade hearing on the ground that the People had (still) not turned over the missing Rosario material (the back side of the AIDED card). The People did not file a motion in response.
At the calendar call on November 20, 2000, the People explained that they had not yet been able to obtain the AIDED card from the police. The case was adjourned to December 6, 2000, and the People were again ordered to obtain the missing document.
At the calendar call on December 6, 2000, the People produced a copy of a “New York City Police Department Aided Report,” a computer-generated document purporting to reflect the information P.O. Christie recorded on the AIDED card. The computer document has a “Narrative Section” which states: “aided [the victim] was punched in nose causing fracture to nose also, aided fell causing bruise to back of head.”
The People orally argued that for Rosario purposes the computer document was the “duplicative equivalent” of the AIDED *568 card. This court disagreed. The “duplicative equivalent” exception to the Rosario rule requires
“precise correlation between the undisclosed and disclosed material * * * a visual inspection of both documents is [therefore] necessary * * *
“a document’s unavailability [therefore] poses an insurmountable barrier to making the [required] detailed comparison.” (See, People v Joseph, 86 NY2d 565, 569 [1995].)
Accordingly, this court ordered the People to make yet another attempt to obtain the missing document, and adjourned the case to December 7th, and then again to December 12, 2000 for the same purpose.
At the calendar call on December 12, 2000, the Assistant District Attorney reported that he had spoken to P.O. Christie, who told him that pursuant to current procedures, the “scratch” (handwritten) copy of the AIDED card had been turned over to the security room, typed into the computer, and 30 days later sent to One Police Plaza (NYPD Headquarters); it was no longer in P.O. Christie’s or his precinct’s possession. The ADA stated that “the NYPD says they don’t have it either.” (Transcript, part C, at 12-13.) The defendant’s counsel orally moved the court to conduct a hearing, which she referred to as a “Martinez hearing,” to determine appropriate sanctions. (The defendant’s counsel offered to submit a written memorandum of law in support of this motion, but this court deemed it unnecessary.) The case was adjourned to December 21, 2000 for this court’s written decision.
Discussion
The Rosario rule (People v Rosario, 9 NY2d 286 [1961] [subsequent history omitted]) is codified in CPL 240.44 (discovery at a pretrial hearing) and 240.45 (discovery at trial), and provides that the prior statement of a prosecution witness which pertains to the subject matter of that witness’s direct testimony must be turned over to the defendant. The underlying purpose is to ensure that a defendant has an opportunity to cross-examine the People’s witness effectively.
In this case, the defendant contends, and the People do not dispute, that P.O. Christie filled out the back side of the AIDED card pertaining to the victim’s injuries. (The defendant’s motion on this issue, filed on September 22, 2000, states that prior to the commencement of the suppression hearing on June 12, 2000, “it was determined that the testifying officer, Police Officer John Christie, filled out both sides of the AIDED card,” *569 citing page 13 of the minutes, AP-9, Judge Schack presiding.) Therefore, inasmuch as P.O. Christie testified about the victim’s injuries on direct examination at the suppression hearing (as noted supra), the back side of the AIDED card constitutes Rosario material.
The People have an obligation to preserve Rosario material, as a “necessary corollary of the duty to disclose” it. (See, e.g., People v Kelly, 62 NY2d 516, 520 [1984].) If they fail to do so, the defendant may he prejudiced; therefore, the court must impose an appropriate corrective. “[T]he degree of prosecutorial fault surely may be considered, but the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society.” (People v Kelly, supra, at 520.)
In the instant case (as noted supra), the defendant and the People agree that the missing document contained a description of the complainant’s injuries. This matter — the nature of the injuries — was not itself an issue at the suppression hearing, i.e., the victim need not have been visibly injured in order to have justified the defendant’s arrest. (Probable cause to make an arrest can be established by an identified citizen accusing another of a crime. See, e.g., People v Grams, 166 AD2d 717 [2d Dept 1990].) Accordingly, for purposes of the suppression hearing, the missing document is relevant only to P.O. Christie’s credibility as a witness. If his description of the victim’s injuries, as noted on the AIDED card, was inconsistent with the description he gave on direct examination at the hearing, the defendant could have used such inconsistency to impeach the officer’s credibility on cross-examination.
As noted supra, the defendant first received assurances (reportedly from Judge Schack and then from JHO Goldman) that, at the defendant’s option, the suppression hearing would be reopened to explore any issues raised by the missing document. Subsequently, the defendant filed a written motion asserting that “the appropriate remedy for failure to produce Rosario material for a suppression hearing is a de novo hearing, not merely a reopened hearing.” (Citing People v Banch, 80 NY2d 610 [1992].) Most recently, the defendant has (orally) moved for a hearing such as that held in People v Martinez (71 NY2d 937, supra) to consider Rosario sanctions.
Remedy
This court finds no need for a de novo Dunaway/Huntley/Wade hearing; a reopened hearing will suffice. In People v Feerick (93 NY2d 433 [1999]), the Court of Appeals observed *570 that the rationale underlying the “new” hearing contemplated in People v Banch (supra) would in some cases be better served by reopening a pretrial hearing only to the extent necessary to explore the Rosario material, and then issuing a “new” finding. “Although some Rosario violations may require * * * a ‘full blown’ hearing, the hearing court * * * was well within Banch and its discretion, to reopen the * * * inquiry only to the extent necessary to cross-examine the People’s witness as to the contents of the * * * Rosario documents.” (People v Feerick, supra, at 451-452.)
It is also unnecessary to conduct a hearing like that held in People v Martinez (supra). In that case, a hearing was held to “determine whether a writing existed and whether there had been a Rosario violation.” (People v Martinez, supra, at 939.) These issues are not in dispute in this case; this court is capable of prescribing a remedy without holding such a hearing.
“Loss or destruction of Rosario material may result in an adverse inference charge at trial * * * At the hearing stage it is the court that weighs the credibility of witnesses and any adverse inference from the loss or destruction of Rosario material.” (See, People v Richards, 152 Misc 2d 775, 778 [Sup Ct, Kangs County 1991].) Accordingly, the suppression hearing shall be reopened before JHO Goldman on January 11, 2001, for the sole purpose of allowing P.O. Christie to be questioned about the AIDED card. JHO Goldman is instructed to review the transcript of the original hearing, along with the testimony elicited at the reopened hearing, and to weigh any adverse inference against the People for their failure to preserve and produce the back side of the AIDED card. On the basis of that review, JHO Goldman is instructed to issue new recommendations regarding the disposition of the defendant’s Dunaway/Huntley/Wade motions, which should be returned to this court for decision and order.