OPINION OF THE COURT
Gustin L. Reichbach, J.
Background
The defendant, Rodney Cannon, was indicted for robbery in *137 the first and third degrees and related offenses in connection with the robbery of a livery cab driver on February 13, 2000. The defendant, and an uncharged other, called a livery cab and directed the driver to take them to a location near where the defendant lived. When the car arrived at its location, the defendant exited the vehicle to go into a nearby bodega. Upon exiting the bodega, the People claim the defendant returned, stood outside the cab and said something to the uncharged other in the backseat who then exited the vehicle. The People charge the defendant then displayed a knife and, while outside of the driver’s side window, threatened the driver and demanded his money. The defendant was arrested approximately one hour later near the location of the robbery, after he was pointed out to the police by the driver of the livery cab.,
The defendant, who testified before the grand jury, asserts that no robbery took place. Rather, the defendant claims that this was a “fare-beat,” i.e., the defendant took the cab and left without paying.
Prior to trial, pursuant to open file discovery, the District Attorney provided defense counsel with eight still photographs taken by the “verified taxi camera” mounted in the cab. These photographs show the defendant and the uncharged other at various times in the backseat of the livery cab, as well as the defendant exiting the cab. The defense subsequently made a demand for all photos taken by the “taxi cam.”
Immediately prior to jury selection, the People indicated that no other photographs from the taxi cam had been preserved. In response, the defendant moved to dismiss the indictment, or in the alternative, to preclude the eight photographs and the driver’s testimony claiming both a discovery violation and a violation of defendant’s rights pursuant to Brady v Maryland (373 US 83 [1963]).
The People argued in response that it is police policy to preserve only those photographs that they deem relevant, that there was no intentional conduct on behalf of the police to deprive this defendant of evidence and most importantly, that since the camera would not have shown the robbery that occurred outside the cab, the defendant has shown no prejudice and so is not entitled to any sanctions in the event the court found any violations.
As discussed below, there was no basis presented to the court, nor were any facts adduced at trial, that would suggest *138 that the photographs taken by the digital camera did or even could have contained any exculpatory material. Consequently, defendant’s application pursuant to Brady (supra) was denied. The discovery violation is a different matter.
Under our adversary system, it is not up to the police to unilaterally determine which evidence is relevant. The police were in possession of photographs which qualified as discovery material and therefore had a duty to preserve them. Due to their failure to do so, the court gave a missing document charge.
After jury deliberation, the defendant was found guilty of the crime of robbery in the third degree.
Because, as discussed below, it is apparently a standard operating procedure for the Police Department unit charged with reviewing taxicab surveillance films to select only those photographs they deem relevant and to not preserve other images, this court finds it necessary to issue this written decision so the Police Department and District Attorney’s office is on notice that this policy must change or more serious sanctions may be imposed in the future.
Findings of Fact
During the course of the trial, Sergeant Joseph Keenen was called as a defense witness and testified as to the operation of the “Verify Digital Taxi Cam Model 1500.” Sergeant Keenen, a 23-year veteran of the New York City Police Department, is one of the officers charged with responsibility for viewing and preserving evidence taken by taxi cameras. The Police Department has 16 lap top computers at various commands loaded with the required “verify” software for viewing these images. The Sergeant testified in a highly credible manner regarding the operations of the verified taxi camera and police practices with respect thereto.
The Taxi and Limousine Commission of the City of New York has promulgated rules intended to protect drivers of livery cabs. (35 RCNY 6-13 [a] [1], [3] [ii].) These rules require that a livery cab either install a partition separating the driver’s seat from the rear passenger seat or, alternatively, the Commissioner has approved installation of a verified taxi camera, as was done in this case. The verified taxi camera is designed to take digital photographs in a v-shape so as to show all occupants of the car. These images are stored on a chip loop which, depending on lighting conditions, can hold between 215 and 230 images. Once the chip is full of images, the loop *139 continues so that additional images replace the earliest images previously stored. The images can be downloaded for viewing and it takes between 15 and 20 minutes to view all of the images stored on the chip. All of the images can be downloaded in an hour to an hour and a half and approximately 20 images can be stored per floppy disk.
The starting mechanism for the camera is a trigger mounted on all four doors of the vehicle. A second trigger is located near the driver which permits manual operation. Once activated, the camera takes photographs automatically in a timed sequence. When the door is opened the trigger is activated and the camera takes 15 digital photographs in the first 45 seconds or approximately one photograph every three seconds. After this initial burst, the camera then takes one photograph per minute for the next five minutes and thereafter takes one photograph every five minutes. Three photographs were introduced into evidence, People’s Exhibit 2 A, B, and C, which were taken in five minute intervals while the defendant and the uncharged other were riding in the cab. People’s Exhibit 2 D, E, F, G, and H were taken within three or four seconds of one another when the defendant exited the vehicle. The uncharged other remained in the vehicle and was visible in the photograph after defendant exited. Sergeant Keenen testified that the camera was not ideally placed in this vehicle because virtually none of the driver was visible in the image, merely a small portion of the driver’s right shoulder. The Sergeant testified that even on the most ideally placed camera, the photographs would never show the outside of the vehicle where this robbery purportedly occurred.
Sergeant Keenen indicated that he viewed all the photographs taken by this camera in his capacity as an investigator seeking any images relevant to this robbery investigation. The Sergeant indicated that he viewed numerous photographs but he deemed only these eight relevant and only these were preserved.
It appears from the testimony of Sergeant Keenen that the procedures followed in this case are standard operating procedures for the Police Department in reviewing taxicab surveillance film; to wit, police officers view the tapes, select those photographs they deem relevant and the other images are not preserved.
Following Sergeant Keenen’s testimony, the defendant renewed his motion to dismiss. The People argued that following established procedures, they preserved and turned over to *140 the defense all relevant photographs. The People also contend that because none of the photographs would have shown the outside of the cab where the robbery is alleged to have taken place, the defendant has suffered no prejudice by the failure to preserve all the photographs taken inside the taxicab.
The defense argued that even in the absence of any photographs outside the cab, additional photographs may have shown movement on the part of the driver’s shoulders that possibly could have either confirmed or contradicted the driver’s testimony that in response to the defendant’s demands he reached into his pocket to remove money.
Conclusions of Law
Given that the defendant acknowledged in his grand jury testimony that he was present in the taxicab and, further, that this camera could not possibly have shown the outside of the driver’s side window where the crime supposedly took place, there is absolutely no basis to conclude that any of the material destroyed contained Brady material. It is similarly clear that all of the cab surveillance digital images were in police custody and thus discoverable pursuant to CPL 240.20 (1) (d). It is well established that the People have an affirmative obligation to preserve all discoverable evidence within their possession. (People v James, 93 NY2d 620; People v Kelly, 62 NY2d 516; People v Hernandez, 285 AD2d 559 [2d Dept 2001].) If the People fail to exercise care to preserve such evidence and the defendant is prejudiced by their mistake, the court must impose an appropriate sanction. (People v Martinez, 71 NY2d 937 [1988].)
While the court is persuaded by the evidence that there was no purposeful design by the police to deprive this defendant of discoverable evidence, it is also clear that pursuant to Police Department policy, additional photographs from the video surveillance camera that should have been preserved were not. Our Court of Appeals has instructed us that where the police have a practice of not maintaining discoverable evidence, such policy, while perhaps demonstrating their lack of intent to harm a particular defendant, still requires the Court to hold the People accountable for such loss. (See, People v Kelly, 62 NY2d 516, 520 [1984].) In People v Kelly (supra), the Court was faced with a police practice in decoy pick-pocket cases of immediately returning property to the decoy officer. The Court held there, as this court holds here, that while acting in accordance with police practice may demonstrate the absence of *141 intent to harm the defendant, the People are nevertheless accountable for the loss.
Once it is established, as it is here, that the People are accountable for the loss, the only question is what sanctions are necessary. (People v Kelly, supra at 520.)
“In fashioning an ‘appropriate’ response for the prosecution’s wrongful failure to preserve evidence * * * , the degree of prosecutorial fault surely may be considered, but the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society.” (People v Kelly, supra at 520; People v Hernandez, 285 AD2d 559 [2d Dept 2001].)
While the choice of an appropriate sanction is committed to the sound discretion of the trial court, destruction of discoverable evidence does not automatically require the dismissal of charges. Indeed, dismissal is considered too drastic a remedy when less severe measures can rectify the harm done by the People’s failure to preserve evidence. (People v Kelly, supra; People v Haupt, 71 NY2d 929 [1988].)
In People v Kelly, where the police had returned the wallet and money to the decoy officer, the Court of Appeals determined that the trial court had abused its discretion in dismissing the charges.
When the defendant claims, as here, that the loss of evidence deprives him of an opportunity to perhaps demonstrate that the actions described by the complainant were not substantiated by the video pictures, the court must consider a number of factors including the proof available at trial, the significance of the missing evidence, and whether the loss was intentional or inadvertent. (People v Jenkins, 41 NY2d 307; People v Haupt, 71 NY2d 929.)
In the instant case, the purported robbery of the driver took place while the defendant was outside of the car. Given the setup of the camera, there was no way that any of the photographs taken by the taxi cam would have captured the action outside the driver’s window. At best, the missing photographs might have shown movement or nonmovement of a small portion of the driver’s shoulder which might or might not have any connection to what was happening outside.
Given the minimum prejudice to the defendant by the destruction of photographs that displayed only the inside of the cab, at the conclusion of the trial the court reaffirmed its initial determination that the proper remedy was to give an adverse *142 inference instruction to the jury. The instruction provided a context for defense counsel’s exploration of this issue in his examination of Sergeant Keenen and in his summation to the jury.
The court would note that in People v Perez (255 AD2d 403 [2d Dept 1998]), the Second Department sustained a trial court’s refusal to impose any sanction on the People for destruction of a surveillance videotape prior to trial. Finding, as the court does here, that the evidentiary value of the missing photographs was questionable, the Second Department in Perez found that the court did not improvidently exercise its discretion in declining to impose any sanction whatsoever. (See also, People v Daly, 186 AD2d 217 [2d Dept 1992].)
It is this court’s view, given the limited evidentiary value of the missing photographs, whatever minimum risk of prejudice there may have been to the defendant was cured by the adverse inference instruction given by the court.
However, in applying this sanction, the court puts the People on notice that under our adversary system the police department cannot reserve unto itself the sole discretion to determine the relevance of evidence in the prosecution and defense of a criminal proceeding. All images taken in the course of an incident must be preserved and it is clear that this can easily be done with minimum effort and expense. Failure to do so in the future may warrant stronger sanctions.