■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERTO DeJESUS, Appellant. [8 NYS3d 111]—

Judgment, Supreme Court, New York County (Ruth Pickholz, J., at suppression hearing; Thomas Farber, J., at jury trial and sentencing), rendered October 7, 2011, as amended October 26, 2011, convicting defendant of robbery in the second degree (four counts), criminal impersonation in the first degree (two counts) and criminal possession of a weapon in the fourth degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 18 years to life, unanimously affirmed.

The trial court providently exercised its discretion when it replaced a juror who, after repeated phone calls from the court, finally called the court almost two hours after the trial's

scheduled starting time, and stated that he had overslept after a night of drinking. "The Court of Appeals has held that the 'two-hour rule' gives the court broad discretion to discharge any juror whom it determines is not likely to appear within two hours" (*People v Kimes*, 37 AD3d 1, 24 [1st Dept 2006], *lv denied* 8 NY3d 881 [2007], citing *People v Jeanty*, 94 NY2d 507, 517 [2000]). Here, it was certain that the juror would not appear within the two-hour period, and the court providently chose not to delay the trial any further. Defendant's claim that the court should not have had an ex parte phone conversation with the juror is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits, and we also find that there was no mode of proceedings error. Phone contact with a juror regarding the juror's absence or lateness is a quintessentially ministerial matter, frequently handled by nonjudicial staff, and it is very different from the type of inquiry contemplated by *People v Buford* (69 NY2d 290 [1987]).

The court properly denied defendant's motion to suppress evidence recovered subsequent to his stop, frisk, and resulting arrest. There is no basis for disturbing the court's credibility determinations. The court also properly denied defendant's motion to suppress statements. There was no coercive police conduct, and the totality of the circumstances establishes that the statements were voluntarily made (*see Arizona v Fulminante*, 499 US 279, 285-288 [1991]; *People v Anderson*, 42 NY2d 35, 38-39 [1977]). Although the statements were obtained over a lengthy period of time, only a small part of this time was spent on interrogation. Defendant had ample time to sleep if he so chose, took several naps, and received food and an opportunity to talk to his child's mother. Accordingly, the People established that the statements were voluntary (*see e.g. People v Salley*, 25 AD3d 473, 474 [1st Dept 2006], *lv denied* 6 NY3d 838 [2006]).

The court properly admitted evidence of an uncharged Brooklyn robbery that defendant committed shortly before one of the charged crimes. The charged and uncharged robberies were inextricably interwoven, they were supported by overlapping evidence, and they constituted a single chain of events and a common scheme or plan (*see People v Dorm*, 12 NY3d 16, 19 [2009]; *People v Alvino*, 71 NY2d 233, 242 [1987]; *People v Vails*, 43 NY2d 364, 368-369 [1977]). The probative value of this evidence outweighed any potential prejudice, which the court minimized by way of thorough limiting instructions.

By delivering an adverse inference charge, the court provided

an adequate remedy for the People's loss of the recording of a robbery victim's 911 call (*see People v Martinez*, 71 NY2d 937, 940 [1988]), and it properly exercised its discretion in denying defendant's requests for other relief. We note that defendant was provided with the Sprint report of the call.

We perceive no basis for reducing the sentence.

We have considered and rejected defendant's pro se claims. Concur—Acosta, J.P., Saxe, Richter, Gische and Kapnick, JJ.