**George CARTER, Petitioner,**

v.

**Christopher ARTUZ, Respondent.**

**No. 98–CV–3067.**

United States District Court, E.D. New York.

June 19, 2001.

George Carter, Stormville, NY, pro se.

Dian Kerr McCullough, Attorney General's Office, New York City, for Christopher Artuz.

## ORDER

GERSHON, District Judge.

Petitioner George Carter brings this petition *pro se* pursuant to 28 U.S.C. § 2254 challenging his December 9, 1993 conviction in the New York State Supreme Court, Queens County. A jury found him guilty after trial of two counts of attempted murder in the first degree, three counts of attempted murder in the second degree, one count of criminal possession of a weapon in the second degree, one count of criminal possession of a weapon in the third degree, three counts of reckless endangerment in the first degree and one count of criminal possession of a weapon in the fourth degree. As is explained more fully below, the trial judge subsequently dismissed two of the three counts of attempted murder in the second degree as lesser included offenses.

Petitioner raises four claims in his application: (1) that the State failed to prove beyond a reasonable doubt that petitioner, who was intoxicated at the time of the

events charged in the indictment, was capable of forming the intent necessary to be convicted of attempted murder in the first degree and criminal possession of a weapon in the second degree; (2) that petitioner's conviction of two counts of attempted murder in the second degree as to two police officers should have been dismissed as lesser included offenses; (3) that his trial counsel was ineffective; and (4) that his appellate counsel was ineffective.

Although petitioner never exhausted his claim that his appellate counsel was ineffective by filing a petition for a writ of error coram nobis, 28 U.S.C. § 2254(b)(2) gives the district court the discretion to deny a habeas corpus petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Because, as is explained below, it is clear from the trial record that petitioner's claim concerning his appellate counsel lacks merit, I am exercising my discretion to deny the petition on the merits.

### Sufficiency of the Evidence

■ A district court should grant habeas corpus relief based on a claim of insufficiency of the evidence only if it finds, upon the record evidence adduced at trial, that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This question must be reviewed in the light most favorable to the prosecution. See id. at 319, 99 S.Ct. 2781. To determine the essential elements of the crime, the habeas corpus court must look to state law, see id. at 324 n. 16, 99 S.Ct. 2781, and the evidence must be reviewed as a whole. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996). "[A]ssessments of the weight of the evidence or the credibility of witnesses are for the [factfinder] and not grounds for reversal on appeal; we defer to the [factfinder's] assessments of both of these issues." Id. When faced with a record from which conflicting inferences may be drawn, the habeas corpus court must presume, even if the record does not show it affirmatively, that the trier of fact resolved the conflict in favor of the prosecution and must defer to that resolution. See Wright v. West, 505 U.S. 277, 296–97, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992).

■ Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that petitioner had the intent to kill his wife, Police Officer Joseph Tetonic and Police Officer Joseph Walas with a loaded gun and, thus, that he had the requisite intent to be found guilty of both attempted murder in the first degree and criminal possession of a weapon in the second degree. See N.Y. Penal Law § 125.27(1)(a)(i) (crime of first degree murder requires "intent to cause the death" of a police officer); N.Y. Penal Law § 110.00 (crime of attempt requires "intent to commit a crime"); N.Y. Penal Law § 265.03 (crime of criminal possession of a weapon in the second degree requires "intent to use [weapon] unlawfully against another").

Specifically, both petitioner and his son testified that, early in the morning on February 27, 1993, petitioner and his wife were arguing in their apartment. See Tr. at 505, 530. At one point during the argument, petitioner swung a knife at his wife, and she ran out of the house to call the police. See Tr. at 506–08, 532. Officer Tetonic and Officer Walas testified that they responded to the call, and, after speaking with Ms. Carter, they accompanied her back to her apartment. See Tr. at 235–36, 389–90. When they arrived there, Ms. Carter knocked on the front door of the building, and petitioner appeared in a second floor window. See Tr.

at 236, 391–92. According to their testimony, the officers asked petitioner to come downstairs so that they could talk to him. *See* Tr. 236, 392–93. Officer Walas testified that petitioner started yelling at Ms. Carter, stating that Ms. Carter "was being disrespectful to him, and she was abusing him." Tr. 392. In addition, Officer Walas said petitioner warned the officers that, if he came downstairs, they should be "prepared to defend" themselves. Tr. at 393. Similarly, Officer Tetonic stated that petitioner threatened, "[S]omebody was going to get hurt, somebody was going to die." Tr. 236; *see also* Tr. at 262. Both officers testified that petitioner said, "Today is a good day to die." Tr. at 237, 264, 266, 393.

According to his own testimony, petitioner retrieved a loaded gun from the bedroom and then returned to the window. *See* Tr. 535, 548. Officer Tetonic testified that he saw petitioner "hanging out of the window and he had the gun drawn in our direction, right at us, and he fired two rounds in our direction." Tr. at 237–38; *see also* Tr. at 264 ("I turned around, gun was pointed directly at me and he started shooting"). Officer Walas similarly testified that petitioner "fired two shots at my direction." Tr. at 393. Petitioner disappeared from the window, and the two officers and petitioner's wife ran for cover behind two parked cars. *See* Tr. at 265–66, 280, 394. According to Officer Tetonic, petitioner then "came to the window and he took the firearm in his hand and aimed it toward our direction and he fired another round at us." Tr. at 238; *see also* Tr. at 269. Officer Walas similarly testified that petitioner "reappeared from the window and fired a shot in our direction." Tr. at 394. Officer Tetonic stated that petitioner disappeared from the window again and then returned once more "with the firearm drawn in our direction." Tr. at 239.

Several hours after this incident, Sergeant Daniel King interviewed petitioner in the police precinct. According to Sergeant King's testimony, petitioner told him that, when his wife returned to the apartment with the police, he started arguing with her, and, when she didn't respond, he became "infuriated." Tr. at 489. Petitioner acknowledged that he went to get a gun and then pointed it out the window. *See* Tr. at 489–90. Petitioner also told Sergeant King that he had yelled to the police officers "that he didn't want to hurt them, he wanted to hurt her. And he fired several shots at her direction." Tr. at 490.

Notwithstanding this evidence, from which a rational jury could have inferred petitioner intended to kill his wife and the two officers, petitioner claims that he was so intoxicated during the relevant events that he could not have formed the requisite intent. Petitioner testified that he had been "doing quite a bit of drinking," Tr. at 529, that he was "very angry, out of control of liquor," Tr. at 532, and that he was "reasonably" drunk. Tr. at 545. The evidence at trial also included a hospital record, which was not made a part of the record on this petition, but, according to defense counsel's summation, it appears to have included a notation that petitioner was intoxicated. *See* Tr. 494, 579.

Based upon all of the evidence, however, a rational jury could have concluded that, even if petitioner was intoxicated at the time of the incident, he was lucid enough to form the requisite intent. *See Dorst v. Coombe,* No. CV–95–2874, 1996 WL 733072, *4 (E.D.N.Y. Dec.11, 1996); *Rivera v. Scully,* 92 Civ. 6659, 1993 WL 454209, *3 (S.D.N.Y. Nov.2, 1993), *aff'd,* 40 F.3d 1237 (2d Cir.1994). Specifically, petitioner acknowledged that he was "fairly" able to remember what occurred during the incident, Tr. at 545, and, according to Sergeant King's testimony, petitioner pro-

vided a detailed statement to the police several hours later. In addition, despite his earlier testimony, petitioner repeatedly denied on cross-examination that he had "lost control" due to his drinking. Tr. at 544. Several of petitioner's actions also could have been viewed by a rational jury as evidence that his intoxication did not negate his intent. For example, petitioner's son testified that he saw his father load a shotgun in the kitchen, *see* Tr. at 527–28, and, upon surrendering to the police, petitioner also was capable of following their directions on how to disassemble his gun. *See* Tr. at 539–40. There was no evidence that petitioner was slurring his speech or that he was otherwise incapacitated. As a result, this claim does not entitle petitioner to habeas corpus relief.

### Dismissal of Lesser Included Offenses

Petitioner also argues that he is entitled to habeas corpus relief because the two counts of attempted murder in the second degree relating to Officers Tetonic and Walas should have been dismissed as lesser included offenses of the two counts of attempted murder in the first degree relating to those same officers. The record shows that Justice Arthur J. Cooperman did dismiss the two counts of attempted murder in the second degree as "inclusory concurrent counts" in a decision dated December 9, 1993. *See* Resp. Ex. B. *See also* Sentencing Tr. at 8–9 (showing that petitioner was sentenced on two counts of attempted murder in the first degree relating to the two officers and one count of attempted murder in the second degree relating to his wife). As a result, this claim is without merit.

### Ineffective Assistance of Trial Counsel

In addition, petitioner claims that his trial counsel was ineffective because he was ill and undergoing chemotherapy at the time of trial. Respondent argues that this claim is procedurally barred. Federal habeas corpus review of a state conviction is prohibited if a state court judgment is based on an "adequate and independent state ground," *Harris v. Reed,* 489 U.S. 255, 261, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), such as a state procedural bar rule. In this case, petitioner raised the claim that his trial attorney was ineffective for the first time in a motion brought pursuant to N.Y.Crim. Proc. Law § 440.10. Justice Cooperman denied the motion in a decision dated February 27, 1997. In doing so, Justice Cooperman cited N.Y.Crim. Proc. Law § 440.10(2)(c) and explained that "a defendant who demonstrates pre-appeal knowledge of grounds for his constitutional claim and fails to present such claim in the course of his direct appeal is foreclosed from any consideration of that issue on a motion to vacate judgment." [1] Justice Cooperman went on to state that, "[i]n any event, notwithstanding the procedural bar," petitioner had failed to show that his attorney was ineffective.

With full cognizance of *Jones v. Stinson,* 229 F.3d 112, 118–19 (2d Cir.2000), where the Second Circuit recently held that a district court is not barred from reaching the merits of a claim for federal habeas corpus relief if the state court sets forth the "factual predicate" for a finding of procedural default but never clearly states its intention to rely upon the state procedural bar, I conclude that the trial court in this case did rely on a procedural bar. In

---

1. The New York Supreme Court was the last court to issue a reasoned opinion on petitioner's claim. The Appellate Division denied leave to appeal on July 9, 1997 without comment. Although petitioner also attempted to appeal to the New York State Court of Appeals, that court explained that the decision of the Appellate Division was not an appealable order.

addition to Justice Cooperman's use of the phrase "notwithstanding the procedural bar," it is significant that the State did not address the merits of petitioner's claim in its brief opposing petitioner's Section 440.10 motion and specifically requested leave to respond to the merits in the event the state court were to decide petitioner's claim was not procedurally barred. *Cf. Coleman v. Thompson,* 501 U.S. 722, 740, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (weighing fact that the Commonwealth had based its motion to dismiss solely on procedural bar before concluding that state court decision granting motion rested primarily on state law).

■ Nonetheless, the merits will be addressed. In order to establish that his constitutional right to the effective assistance of counsel was violated, petitioner must satisfy the two-pronged test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Bellamy v. Cogdell,* 974 F.2d 302, 308 (2d Cir.1992) (en banc) ("claims of ineffective assistance based on attorney illness are best suited to the fact-specific prejudice inquiry mandated by *Strickland* "). That test requires a showing that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms and that there was a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *See Strickland,* 466 U.S. at 687–88, 694, 104 S.Ct. 2052. Petitioner cannot make such a showing.

■ Petitioner's trial counsel acknowledged at several points in the record that his chemotherapy treatments might pose scheduling problems, *see* Huntley/Mapp Hrg. Tr. at 60, and that his illness might cause him to be "somewhat depleted in strength or energy" necessitating that he "remain seated when it may be difficult for [him] to move about too much." Tr. at 8–9. *See also* Tr. at 185, 497 (requesting permission to remain seated while addressing the court); Tr. at 218–19 (stating in his opening, "Please forgive me if I walk a little more deliberately than is my usual habit. I have a little bit of medication in me so bear with me"). However, there is no evidence that defense counsel's medical condition compromised his mental capabilities in any way.

Petitioner points to only one example of specific conduct as evidence that his trial attorney was ineffective: He alleges in his petition that defense counsel "had difficulty preparing post trial motions because of his condition." The only post trial motion made by petitioner's trial attorney was a motion to set aside the verdict. In that motion, defense counsel wrote, "Unfortunately counsel has been involved in ongoing serious medical and hospital treatment under difficult circumstances for which reason this motion has not been previously served." Although this statement suggests that the motion may have been late, Justice Cooperman treated it as being timely filed, and, thus, petitioner could not have suffered any prejudice had the motion, in fact, been untimely.

Turning to the substance of the motion, petitioner has not proposed any arguments that defense counsel should have made. Nor has he demonstrated that the arguments counsel did choose to make were unreasonable. In fact, although the motion was ultimately unsuccessful, defense counsel suggested an alternative theory of the case and competently attacked the credibility of the two police officers, the State's primary witnesses. In sum, there is nothing about the motion to set aside the verdict that shows defense counsel's performance was deficient in any way, and, as a result, this claim must be denied.

### Ineffective Assistance of Appellate Counsel

■ Finally, petitioner argues that his appellate counsel was ineffective. In order to establish a claim of ineffective assistance of appellate counsel, petitioner must satisfy the same two-pronged test outlined in *Strickland*. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994). It is not required under *Strickland* that an attorney argue every nonfrivolous claim requested by a defendant. Rather, it is counsel's duty to choose among potential issues according to his or her professional judgment as to their merit and his or her tactical approach. *See Jones v. Barnes*, 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987(1983).

Here, petitioner alleges that his appellate attorney was ineffective for failing to raise three claims on his direct appeal: (1) that petitioner's trial counsel provided ineffective assistance due to his medical condition; (2) that the trial judge "failed to properly admonish the jury as to their duties at adjournments;" and (3) that petitioner was subjected to an improper interrogation at the police precinct. Instead, appellate counsel argued (1) that the State had failed to prove beyond a reasonable doubt that petitioner, who was intoxicated at the time of the relevant events, had the requisite intent to be convicted of attempted murder in the first and second degrees and criminal possession of a weapon in the second and fourth degrees; and (2) that petitioner's convictions of attempted murder in the second degree as to the two police officers should have been dismissed as lesser included offenses. The latter claim was frivolous because, as is explained above, Justice Cooperman had already dismissed the two counts of attempted murder in the second degree.

However, challenging the sufficiency of the evidence was a colorable argument, and petitioner has not demonstrated that it was weaker than the alternative arguments he proposed. *See Mayo*, 13 F.3d at 533 ("a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker").

■ In fact, the alternative arguments proposed by petitioner clearly lack merit. First, as is explained above, petitioner has not pointed to any evidence in the record that suggests his trial counsel's medical condition impaired his ability to provide effective representation. As for petitioner's vague claim that the trial judge failed to properly admonish the jurors, it is unclear what precisely petitioner believes the trial judge should have said or what he did say that petitioner thinks was improper. Indeed, the record shows that, before virtually every recess, Justice Cooperman appropriately warned the jurors to keep an open mind until all of the evidence had been presented and not to talk about the case. *See, e.g.,* Tr. at 201, 207, 279, 415, 495A, 497, 550, 604. Finally, petitioner claims that his appellate counsel should have challenged his interrogation in the police precinct on the grounds that he was "intoxicated and on medication," that the interrogation occurred "over a period of time," that he "was in a traumatic state" and that he was not provided with an attorney. However, during the pretrial suppression hearing, there was no evidence that petitioner's interrogation was unreasonable in any way or that his statements to the police were involuntary or coerced.[2] That appellate counsel chose to winnow out these relatively weak argu-

**2.** A written statement, unsigned by the petitioner, was not admitted into evidence at trial, and certain guns found in petitioner's apartment were suppressed following the hearing.

ments in favor of another stronger one does not render his representation ineffective.

## CONCLUSION

For the foregoing reasons, the petition is dismissed. A certificate of appealability is denied.

**SO ORDERED.**