Wesley JEREMIAH, Petitioner,

v.

Christopher ARTUZ, Superintendent, Green Haven Correctional Facility, Respondent.

No. 97 CV 3016(NG).

United States District Court, E.D. New York.

Jan. 17, 2002.

Wesley Jeremiah, Stormville, NY, Pro se.

Morgan J. Dennehy, Office of the District Attorney, Brooklyn, NY, for respondent.

### ORDER

GERSHON, District Judge.

Petitioner Wesley Jeremiah petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition is denied.

### BACKGROUND

Petitioner was indicted in connection with the 1986 shooting death of Hylton Clairmont, who died in the hospital almost

two months after the shooting. After a jury trial in New York Supreme Court, Kings County (Kreindler, J.), petitioner was convicted of murder in the second degree (N.Y.Penal Law § 125.25(1)) (intentional murder), and criminal possession of a weapon in the second degree (N.Y.Penal Law § 265.03), and was sentenced on December 13, 1988 to concurrent terms of twenty years to life on the murder count and five to fifteen years on the weapon count.

Petitioner appealed his conviction to the Appellate Division, Second Department, arguing that he was denied effective assistance of trial counsel because counsel: (1) conceded in his opening statement that petitioner caused Clairmont's death; (2) failed to review the medical records and challenge the cause of Clairmont's death in cross-examination of the medical examiner; (3) did not object to the admission of hearsay statements; (4) failed to cross-examine certain witnesses and inadequately or ineptly cross-examined others; (5) failed to make a *Sandoval* application (*People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974)) to preclude cross-examination of petitioner concerning a prior youthful offender adjudication and then improperly elicited from petitioner the existence of that prior conviction; and (6) neglected to rehabilitate petitioner on redirect. Petitioner also claimed that the prosecutor's summation was improper. The Appellate Division affirmed the conviction on December 3, 1990. *People v. Jeremiah*, 168 A.D.2d 458, 562 N.Y.S.2d 577 (2d Dep't 1990). The court rejected the claim of ineffective assistance, finding that defense counsel provided "meaningful" representation, when viewed in its entirety and in light of the circumstances presented. The court specifically rejected the argument that defense counsel had improperly conceded petitioner's responsibility for the shooting, stating:

At trial, the People introduced into evidence, in relevant part, the defendant's statement to the police in which he admitted that he shot the victim in self-defense, as well as eyewitness testimony concerning the shooting. Consequently, defense counsel's trial strategy was to concede that the defendant shot the victim, but to assert the defense of justification. This court will not, with the benefit of hindsight, second-guess an attorney's losing trial strategy, even where, as here, it included an admission to the actual shooting and the unlawful possession of the gun used to shoot the victim. (citations omitted)

Leave to appeal to the New York Court of Appeals was denied. *People v. Jeremiah*, 77 N.Y.2d 907, 569 N.Y.S.2d 939, 572 N.E.2d 622 (1991).

Petitioner, acting *pro se*, then moved in Supreme Court, Kings County, to vacate his conviction pursuant to N.Y.Criminal Procedure Law § 440.10 on the ground that the prosecution failed to turn over potentially exculpatory evidence to him prior to trial. Specifically, petitioner claimed that he was prejudiced by the destruction of the original notes made by the police officer who testified at trial to the petitioner's admissions, in violation of *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881, *cert. denied*, 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961), and by the prosecution's failure to produce the grand jury testimony of an eyewitness and the medical records of the deceased's hospitalization. The trial court denied the motion. The court found that the issue of destruction of notes could not be raised in a Section 440.10 motion because sufficient facts appeared on the record to have permitted adequate review on direct appeal. The court also denied relief on this claim because petitioner had failed to request sanctions and develop the claim

at trial. The court further found that there was no evidence that the police officer destroyed the notes in bad faith or that petitioner was prejudiced by their destruction. The claims concerning the hospital records and grand jury testimony were denied because they had not been raised at trial. The court also noted that the trial record indicated that counsel in fact had received the hospital records and had used them in cross-examining the medical examiner. Finally, the court rejected a claim of ineffective assistance of trial counsel, holding that sufficient facts appeared on the record to have allowed that issue to be raised on appeal, and also that there was "insufficient basis to require a hearing on this issue."[1] The Appellate Division denied petitioner leave to appeal the denial of his Section 440.10 motion.

Petitioner then moved the Appellate Division for a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel on direct appeal because of counsel's failure to raise the issues that petitioner had raised in his Section 440.10 motion or to include them as grounds for arguing that trial counsel had been ineffective, including trial counsel's failure to request an adverse inference charge from the destruction of the police officer's notes. Petitioner also sought in the *coram nobis* petition to argue directly the merits of his claims concerning the police officer's notes, the medical records and the grand jury testimony, and to reargue the claim that trial counsel had been ineffective for failure to develop the defense of lack of causal connection between the shooting and Clairmont's death. The motion was denied on February 26, 1992.

The instant petition was filed in the Southern District of New York on April 21, 1997 and then transferred to this District. This court originally dismissed the petition as untimely; on April 8, 1999, the petition was ordered reinstated by the Second Circuit based upon its intervening decision in *Ross v. Artuz*, 150 F.3d 97 (2d Cir.1998). Petitioner claims that he was deprived of the effective assistance of both trial and appellate counsel. Trial counsel is alleged to be ineffective because he: (1) failed to request an adverse inference charge for the destroyed notes; (2) stated in his opening statement that petitioner caused Clairmont's death although causation was or should have been a contested issue; (3) failed to examine the hospital records and, consequently, did not effectively cross-examine the medical examiner on causation; (4) brought out petitioner's conviction as a youthful offender during the direct examination of petitioner; (5) failed to make a pre-trial motion to suppress evidence of petitioner's prior bad acts. Appellate counsel is faulted for having neglected to raise trial counsel's failure to request an adverse inference charge for the destroyed notes as an additional ground for arguing ineffective assistance of trial counsel.

### DISCUSSION

■ To establish a claim of violation of the Sixth Amendment right to the effective assistance of counsel, petitioner must satisfy the demanding two-part test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052.

---

1. The petition for Section 440.10 relief does not explicitly advance a claim of ineffective assistance of trial counsel, nor has either party supplied this court with documentation from the state court record that sets forth the claim of ineffective assistance of trial counsel that was denied by the trial court's ruling on the Section 440.10 motion.

The first prong requires a showing that counsel's acts or omissions were outside the wide range of professionally competent assistance, evaluated from the perspective of counsel at the time and excluding the benefit of hindsight. There is a strong presumption that counsel's conduct falls within the range of reasonable decisions as judged by prevailing professional norms. *Id.* at 689–90, 104 S.Ct. 2052. Counsel is not required to anticipate changes in the law. *Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001). To establish the second, "prejudice" prong, petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" in this context is one that undermines confidence in the outcome of the proceeding. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The same two-part test applies to claims of ineffective assistance of trial counsel and of appellate counsel. *Sellan,* 261 F.3d at 315. In addition, since this petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "which mandates deference to state court decisions," *Sellan,* 261 F.3d at 308, petitioner must show that state court decisions denying relief involved an objectively unreasonable application of clearly established federal law as determined by the Supreme Court. *Id.* at 308–14; 28 U.S.C. § 2254(d)(1).

### Destruction of Police Officer's Notes

Petitioner asserts that trial counsel was ineffective for failing to request sanctions because the police officer who obtained a statement from petitioner and testified at trial had failed to preserve his original notes after he prepared a police report from them. Petitioner further contends that appellate counsel was ineffective for failing to include this issue as a ground for finding that trial counsel was ineffective.

■ Respondent contends that this aspect of petitioner's claim of ineffective assistance of trial counsel was never raised in state court, that it is now too late to do so, and therefore the claim should be rejected on the adequate and independent state ground that petitioner defaulted in properly advancing the claim in state court. Respondent is correct that, if petitioner did not raise in state court the claim of ineffectiveness of trial counsel based on counsel's failure to request sanctions for the destruction of notes, the claim is now barred from federal habeas review because of procedural default. *See Aparicio v. Artuz,* 269 F.3d 78, 89–91 (2d Cir.2001). However, the record concerning petitioner's exhaustion of the claim is unclear. See footnote 1 *supra.* Since the state court rejected an unspecified claim of ineffective assistance of trial counsel in denying the Section 440.10 motion, and that motion raised issues arising from the destruction of the police officer's notes, the claim of ineffectiveness that the state court rejected may well have related to that issue. Nevertheless, even if petitioner exhausted it, the claim is still barred for procedural default. The Section 440.10 court properly rejected the claim of ineffective assistance of trial counsel on the ground that it could have been raised on direct appeal and therefore could not be raised for the first time in a Section 440.10 motion. The claim of ineffectiveness arising from trial counsel's failure to request sanctions for the destruction of the police officer's notes thus is procedurally barred, *see Carter v. Artuz,* 150 F.Supp.2d 440, 444–45 (E.D.N.Y.2001), unless petitioner can establish cause to excuse his default and prejudice, or actual innocence. *Aparicio,* 269 F.3d at 90–93.

■ Petitioner claims that he was deprived of the effective assistance of appel-

late counsel because appellate counsel neglected to include trial counsel's failure to request relief for the destruction of notes among the grounds for challenging trial counsel's competency on direct appeal. The claim of ineffective assistance of appellate counsel is preserved, since it was raised in petitioner's *coram nobis* application and rejected by the Appellate Division. Ineffective assistance of appellate counsel, if established, can constitute "cause" excusing the procedural default, *see Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000), but "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see Miller v. Portuondo,* 151 F.Supp.2d 245, 248 (E.D.N.Y.2001). Both claims lack merit because trial counsel's performance is not shown to have been deficient and because petitioner has not shown that he was prejudiced by trial counsel's failure to request sanctions. Since, as shown below, the claim relating to trial counsel was not meritorious, there can be no merit to the claim that appellate counsel should have raised it. And, since petitioner cannot establish cause, the claim is procedurally barred.

The police officer who had obtained statements from petitioner, Detective Acevedo, testified that he had written information from his interrogation of petitioner on a scratch pad, transcribed that information onto official police reports, and then discarded the notes because he did not see the need to maintain two copies of the same information. Detective Acevedo testified that all information from the notes had been recorded on the typed police report that had been furnished to the defense, and that it had been his routine practice at the time (and his understanding of common police practice then) to discard the rough notes. Defense counsel thoroughly cross-examined Acevedo concerning his destruction of the notes and argued to the jury that it should consider that evidence in crediting petitioner's testimony that he had told Detective Acevedo that he had shot Clairmont in self-defense when Clairmont threatened him with a machete. (Detective Acevedo did testify that petitioner informed him that Clairmont had struck him in the face with a machete approximately a year before, requiring 75 stitches, that petitioner had heard that Clairmont was still after him, and that when he saw Clairmont, petitioner shot him to prevent Clairmont from attacking him and had not meant to kill him. However, petitioner testified that he also told Acevedo that Clairmont had again threatened and attacked him with a machete before petitioner shot Clairmont, but Acevedo's version did not include such statements.) Defense counsel also urged the jury to use the destruction of notes to reject Acevedo's testimony that petitioner had laughed while giving his statement.

■ The Second Circuit has twice found ineffective assistance of trial and/or appellate counsel where counsel unjustifiably failed to advance a *Rosario* claim which, had it been raised, likely would have resulted in a new trial. *Flores v. Demskie,* 215 F.3d 293 (2d Cir.), *cert. denied,* 531 U.S. 1029, 121 S.Ct. 606, 148 L.Ed.2d 517 (2000); *Mayo v. Henderson,* 13 F.3d 528 (2d Cir.), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). In each of those cases, the prosecution had failed to timely disclose prior statements of a witness in its possession in violation of the rule of *Rosario* and its progeny, codified at N.Y.Criminal Procedure Law § 240.45(1)(a). Unlike these cases, where the remedy under state law for lack of timely disclosure is a new trial without a

requirement of a showing of prejudice, here the police officer's notes had been destroyed and therefore were unavailable. A new trial would be pointless, since the destroyed notes still would not be available for use by counsel. In that situation, the *per se* error rule does not apply. *See People v. Haupt*, 71 N.Y.2d 929, 930, 528 N.Y.S.2d 808, 524 N.E.2d 129 (1988) ("the defendant is not entitled to dismissal of the indictment simply because the People's inadvertence deprived him of statements made by witnesses who testified at trial").

At the time of defendant's trial in December 1988, the most recent Court of Appeals decisions addressing the destruction of prior statements were *Haupt* and *People v. Martinez*, 71 N.Y.2d 937, 528 N.Y.S.2d 813, 524 N.E.2d 134 (1988). In *Haupt*, the Court of Appeals held that when a "defendant claims that the loss of evidence deprived him of a fair trial, the court must consider a number of factors including the proof available at trial, the significance of the missing evidence and whether the loss was intentional or inadvertent." 71 N.Y.2d at 931, 528 N.Y.S.2d 808, 524 N.E.2d 129. There, the trial court found that the prosecution had acted in good faith and the evidence had been lost or destroyed through inadvertence. In affirming the conviction, the Court of Appeals noted that the lost evidence appeared to have little relevance and that defense counsel through cross-examination and summation was able to emphasize to the jury the prosecution's responsibility for the loss and its potential impact on the defense. *Id.* at 930–31, 528 N.Y.S.2d 808, 524 N.E.2d 129. *Martinez* affirmed a conviction where the trial court denied the defendant's motion to preclude a witness from testifying when notes a police officer made of the witness's description of the robber had not been preserved. The Court of Appeals found that the trial court adequately protected the defendant's

rights by giving an adverse inference instruction. 71 N.Y.2d at 939–40, 528 N.Y.S.2d 813, 524 N.E.2d 134. *Martinez* emphasized that the duty to disclose includes the duty to preserve, and, if "the People fail to exercise care to preserve it, and the defendant is prejudiced by their mistake, the court must impose an appropriate sanction" based primarily upon the need to eliminate prejudice. *Id.* at 940, 528 N.Y.S.2d 813, 524 N.E.2d 134. As the Court of Appeals subsequently recognized, it had not unequivocally held that a trial court was required to give an adverse inference charge where notes had been destroyed, but an allegedly identical report had been provided to the defense, until later decisions, notwithstanding the language of *Martinez* quoted above. *See People v. Joseph*, 86 N.Y.2d 565, 569–72, 635 N.Y.S.2d 123, 658 N.E.2d 996 (1995); *People v. Banch*, 80 N.Y.2d 610, 616–17, 593 N.Y.S.2d 491, 608 N.E.2d 1069 (1992); *People v. Wallace*, 76 N.Y.2d 953, 563 N.Y.S.2d 722, 565 N.E.2d 471 (1990).

■ Since Detective Acevedo testified that his report, which had been provided to the defense, incorporated the identical information that was contained in his discarded notes, petitioner's entitlement to an adverse inference instruction at the time of trial in 1988 was uncertain. The Section 440.10 court later determined, crediting Acevedo's testimony, that the notes had not been destroyed in bad faith and that petitioner had not shown that he was prejudiced by their destruction. Without a showing of either bad faith or demonstrable prejudice, it was not clear at the time of petitioner's trial whether any sanction for destruction of notes was appropriate or required. Trial counsel's failure to request an adverse inference charge at a time when petitioner's entitlement to it was not certain under New York law and where counsel had a full opportunity to

explore the issue on cross-examination of the detective and argue it to the jury cannot be considered such an egregious deviation from professional standards as to constitute deficient performance. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052 (to establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment").

■ Moreover, even if an adverse inference charge would have been given if one had been requested, petitioner fails to show that he was prejudiced by the absence of an instruction. Petitioner argues, as he had in the Section 440.10 motion, that he was prejudiced by the destruction of notes and the absence of an instruction in light of Detective Acevedo's testimony that petitioner had laughed while giving his statement. This claim lacks merit. As Justice Kreindler recognized in denying the Section 440.10 motion, petitioner could not have been prejudiced because Detective Acevedo admitted that he had not written down that petitioner had laughed, and thus neither his report nor the destroyed notes would have corroborated his testimony about the laughter. Since the notes were not needed to show that the detective had not recorded the alleged laughter, Justice Kreindler appropriately characterized the destroyed notes as "insignificant" in light of the sole claim of prejudice advanced.

■ I have also considered possible prejudice on broader grounds than those specifically advanced by the *pro se* petitioner, but find no basis for concluding that there is "a reasonable probability that [if an adverse inference instruction had been given] . . . the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052. At most, the destroyed notes could have corroborated petitioner's testimony that he told Detective Acevedo that he fired the shots as Clairmont advanced with a raised machete. An adverse inference instruction might have affected the jury's evaluation of Acevedo's credibility and made it more likely that the jury would have concluded that petitioner did tell Acevedo that he fired as Clairmont attacked him (indeed, a strong adverse inference instruction might have advised the jury that it should assume that the notes included petitioner's claim of attempting to stop Clairmont as he advanced while armed with a machete). However, the critical issue for the jury was not whether petitioner told the same story to the detective that he told at trial, but whether petitioner's trial testimony should be believed. There is no reasonable basis for believing that the verdict would have been different had an adverse inference charge been given. Petitioner's statements to the police were not spontaneous. Petitioner admitted that he fled the neighborhood immediately after the shooting, and he was not located by the police and questioned until more than 1 ½ years later. Petitioner also admitted that he knew that the police were looking for him, and that he believed they eventually would find and question him. Petitioner therefore had ample time to formulate what he would tell the police when they finally came to question him. Given the circumstances in which he was questioned, which afforded ample opportunity for fabrication, the mere fact that petitioner may have given the same version on a prior occasion was of limited significance in evaluating the credibility of his trial testimony.

Furthermore, the evidence of guilt was strong and petitioner's self-defense claim was uncorroborated by other evidence. Petitioner admittedly had fired repeatedly in the deceased's direction until his semi-automatic pistol was empty, inflicting mul-

tiple gunshot wounds, and petitioner was not in any way physically injured that day. No evidence supported petitioner's testimony that the victim possessed a machete before petitioner shot him, or that there was a machete in the premises. Nothing in the testimony of the two eyewitnesses supported petitioner's claim that he had been attacked by the deceased with a machete that day and acted in self-defense. The eyewitnesses had no apparent motive to fabricate the circumstances of the shooting or to falsely accuse petitioner, although counsel attempted to show they might have been limited in their ability to see the entire incident and that they were not model citizens. The question of self-defense hinged on whether the jury nevertheless believed petitioner's version of the events. As noted above, counsel was able to explore the destruction of notes and vigorously argued to the jury that petitioner's testimony, including his assertion that he told the police that he had acted only when threatened by the victim, should be believed. Counsel suggested that the destroyed notes would have corroborated petitioner. The prosecution conceded that the deceased had attacked petitioner in the past and inflicted serious injury with a machete, as petitioner had told the detective when he was questioned, but argued that petitioner shot Clairmont in revenge for that prior incident and not in self-defense. There is no reasonable likelihood that the jury, which did not credit petitioner's testimony, would have done so if it had received an adverse inference instruction concerning the detective's testimony respecting what petitioner had claimed when arrested.

■ I have also examined counsel's overall performance in determining whether petitioner received the "reasonably effective assistance" of counsel at trial guaranteed by the Sixth Amendment.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The Constitution " 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim,' " *Murray v. Carrier*, 477 U.S. at 486, 106 S.Ct. 2639 (quoting *Engle v. Isaac*, 456 U.S. 107, 133–34, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)), although "the right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Id.* at 496, 106 S.Ct. 2639 (rejecting argument that federal habeas petitioner can establish cause for procedural default by showing that otherwise competent defense counsel inadvertently failed to raise on appeal a meritorious argument that the trial court erroneously refused to allow defense counsel to examine a witness's prior statements). *See Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir.2001) ("*Strickland* directs us to look at the 'totality of the evidence before the judge or jury,' keeping in mind that '[s]ome errors [ ] have ... a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture....' ") (quoting *Strickland*, 466 U.S. at 695–96, 104 S.Ct. 2052).

■ Trial counsel ably presented petitioner's justification defense throughout the trial and attempted in cross-examination to develop grounds for questioning the testimony of prosecution witnesses that was harmful to petitioner's defense. Counsel also helped elicit petitioner's trial testimony in an intelligible fashion. His summation was an organized and coherent presentation of the defense position which focused on the justification defense. Notwithstanding the apparent strength of the prosecution's case, counsel forcefully urged the jury to find a reasonable doubt based on an evaluation of the evidence and gaps in the evidence. "The benchmark for

judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052; *see United States v. Cronic*, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors— the kind of [adversarial] testing envisioned by the Sixth Amendment has occurred"). Here, even assuming that counsel committed an oversight or error in judgment in failing to request an adverse inference charge, petitioner was not deprived of his right to the effective assistance of counsel and the omission does not undermine confidence in the outcome.

***Causation Issues***

◼ Petitioner also contends that trial counsel was ineffective because counsel stated in his opening statement that petitioner caused Clairmont's death, he failed to examine the hospital records, and he did not effectively cross-examine the medical examiner to create doubt as to the cause of death. No evidence in the record supports petitioner's assertion that he had a viable defense of lack of causation to present to the jury. Petitioner's speculation, based only on the gap between the shooting and Clairmont's death two months later after having been continuously hospitalized, that the deceased received improper medical care, is insufficient to show either that counsel's performance was deficient or that petitioner was prejudiced.

◼ Under New York law, improper medical care will relieve a defendant of criminal responsibility for death only when "the death can be attributed solely to the negligent medical treatment." *People v. Griffin*, 80 N.Y.2d 723, 727, 594 N.Y.S.2d

694, 610 N.E.2d 367, *cert. denied*, 510 U.S. 821, 114 S.Ct. 78, 126 L.Ed.2d 47 (1993). Here, the medical examiner testified that the cause of death was multiple gunshot wounds to the chest, lung, pulmonary artery, and upper and lower extremities, and petitioner admittedly had fired those shots. The fact that Clairmont's body also had surgical wounds from the operations that had been performed after the shooting, including removal of a lung, and scars from other wounds that were not identified, does not indicate that the gunshot wounds were not a cause of death. Since there is no basis for concluding that counsel acted unreasonably in failing to pursue a causation defense, much less that the state court on direct appeal unreasonably applied federal law in rejecting these grounds for claiming ineffectiveness of counsel, petitioner's contentions are without merit. *See Sanders v. Greiner*, 1999 WL 325524, at *2 (S.D.N.Y.1999) (rejecting claim that counsel should have requested a causation charge, "since the facts did not support a claim that the victim's death was solely attributable to other factors").

◼ The claim concerning medical records also is rejected based on the state trial judge's finding, in denying the Section 440.10 motion, that the trial record supports the inference that counsel had in fact obtained and used the medical records at trial. The determination of a factual issue by a state court is entitled to a presumption of correctness in a habeas corpus proceeding that is overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has not shown that this finding is wrong.

***Questioning Concerning Petitioner's Youthful Offender Adjudication and Prior Bad Acts***

◼ Petitioner's contention that trial counsel failed to make a pre-trial motion to

suppress evidence of petitioner's prior bad acts is refuted by the trial transcript, which shows that the motion in fact had been made and granted in part. The trial court precluded the prosecution from adducing evidence of petitioner's adjudication as a youthful offender based upon his plea of guilty to petit larceny, but permitted inquiry into the facts underlying that adjudication. This ruling was an appropriate exercise of discretion under New York law, which allows inquiry into any prior bad act bearing on credibility, including acts resulting in juvenile or youthful offender adjudications, but prohibits the prosecutor from bringing out the fact of such adjudication to impeach credibility. *People v. Gray,* 84 N.Y.2d 709, 712, 622 N.Y.S.2d 223, 646 N.E.2d 444 (1995); *People v. Greer,* 42 N.Y.2d 170, 176, 397 N.Y.S.2d 613, 366 N.E.2d 273 (1977).

█ Petitioner also claims that counsel was deficient for proceeding to elicit, during direct examination of petitioner, the otherwise inadmissible information that petitioner had been adjudicated a youthful offender upon his guilty plea and had been sentenced to probation. Although, as noted above, the prosecutor could not have elicited that information, and could only have questioned petitioner concerning the underlying incident (which petitioner described without contradiction before the jury as a theft of $3 from minors who gave him money to buy liquor), counsel's election to bring out that information himself is the kind of tactical decision that courts in the Second Circuit are reluctant to second guess. *See United States v. Luciano,* 158 F.3d 655, 660 (2d Cir.1998), *cert. denied,* 526 U.S. 1164, 119 S.Ct. 2059, 144 L.Ed.2d 224 (1999) (counsel's choice to elicit defendant's prior bad acts in examination of other witnesses did not fall below objective standard of reasonableness); *Philippe v. Lacy,* 1998 WL 440301, at *6–7 (E.D.N.Y.1998) (heavy burden to show that counsel's tactical decisions concerning examination of witnesses and presentation of evidence were unreasonable and prejudicial). Trial counsel could reasonably have determined that, since the prosecutor was not precluded from inquiring into the underlying acts, it was preferable to elicit petitioner's version of the incident directly and attempt to minimize it, not only by petitioner's description of the facts, but also by the information that he had received probation upon his admission of guilt. Moreover, by establishing that petitioner admitted guilt in his only prior incident with law enforcement, counsel could have hoped that petitioner's testimony admitting that he shot Clairmont but maintaining that he acted out of justifiable fear for his immediate safety would appear more credible to the jury.

█ Furthermore, petitioner was not prejudiced within the meaning of *Strickland,* since the result would not have been different if the jury had learned only of the prior incident and not the resulting youthful offender adjudication. The trial court instructed the jury that a person who has been adjudicated a youthful offender is not guilty of any crime, and there is no reason to conclude that the jury would have credited petitioner's testimony, or found that the prosecution had not met its burden of disproving the defense of justification beyond a reasonable doubt, if it had not known of the adjudication.

## CONCLUSION

The petition for a writ of habeas corpus is denied. As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. The Clerk of Court is directed to enter judgment for respondent.

**SO ORDERED.**